United States of America versus Rosie Baker. We have two docket numbers, 20-3689 and 21-2232, and I understand Mr. Brandon, you have indicated that you have no need for rebuttal time to be set aside. Is that right? That's correct. Okay, Mr. Brandon. Okay, good morning, everybody. It is good to be back. Today we are here for the appeal of the denial of a motion for compassionate release. The standard of review is whether there was an abuse of discretion, which is further defined as whether there is an erroneous view of the law or a clearly erroneous assessment of the evidence. I think there was one of each here. So with regard to the error of law, while the district Let me interrupt for just a minute, please, if I could. You had mentioned in your stay letter initially that you thought that one of the appeals before us as to the 2020 denial was moot, and you don't offer any arguments regarding the 22 motion. Should we treat that as moot and just focus on the 2021? I did not say it was moot. I think that the government did in their brief, but I did not raise any issue with regard to the earlier appeal. These were consolidated, but I haven't raised an issue with regard to the earlier appeal. So we're focused on the 2021? With regard to the error of law, while the district court did take into consideration the fact that Rosie Baker, who is now 84 years old and has served 25 of her 45 year term of imprisonment, that she is suffering from dementia, and the court found that that was an exceptional circumstance, an extraordinary and compelling reason to perhaps grant her release. Then he turned over, this is Judge Hurley from the Eastern District of New York, then he turned over to the second consideration, and that is whether the 3553A factors would permit her release. I think that the error of law here is that after noting the factors that he is, he should consider, he then said, the factors of specific deterrence, protection from the public, and further crimes of the defendant, and educational or vocational training are not relevant to the instant analysis. Well, that's not true. They are very relevant to the instant analysis. That's two of the four prongs. That's what the judge is supposed to consider, and he just threw them out. But does that mean, does that really mean that he thought they were never relevant so much as they're not really of particular importance in this case? I mean, the judge always has to look at the various factors listed in 3553 and decide which are the ones that merit weight or not in a particular case. So isn't that really what he was saying? One would think that he would do that, but by his own words, that's not what he did. And he never mentions how dementia would affect those two factors. He just says they're irrelevant. That's all he says. He doesn't go on to discuss how dementia impacts on personal deterrence, which of course it does because she can no longer commit the offense, or how it might affect her BOP experience, which it does because she can't benefit from any education or any training. She's a woman who no longer knows why she's imprisoned. She can't benefit. But that gets to my next point. But in any event, I think that those... Wasn't the court saying, I mean, you have argued that they should be considered in favor of your client, but I understood the district court to be saying that they were neutral. That the specific deterrence is no longer an issue because your client can no longer understand her circumstances, for example. Well, then I would say that that's an error of the assessment of the evidence, because if somebody can no longer commit a crime, then that favors letting them out, because that's one of the reasons judges keep people in jail is because they might commit a crime or because of general deterrence, which we can get to all the time. If he says it's not relevant, it seems like the most sensible way to interpret his statement is exactly as you have suggested he ought to, meaning this is no reason to impose a sentence of any sort. Specific deterrence is out the window. It's not relevant. We can't get specific deterrence, so it's not relevant. It's not going to be keeping her in jail. In fact, he has these other issues, like just punishment. Right, which is what he really wanted to get to, so I think that what he did is he just swept away the two concerns that most likely would have favored her release and went to the two concerns that most likely do not favor her release, although I disagree with that. Well, unless that's what he was saying. If he was saying they're not relevant, meaning they don't count in favor of detaining her. I think the court is supposed to assess all of the considerations, 3553A1 and 2. If this didn't factor into his mind, he somehow let slip. I can't read his motion, decision on the motion, the way that you're suggesting it. He says specifically that those factors are not relevant, and he never mentions them again. With regard to the erroneous assessment of the evidence, mostly the judge wanted to talk about just punishment. And again, this is a woman who's serving a 45-year term. She's served 25 years of it already. She's 84 years old. She doesn't know who she is. Punishment for a person like this is meaningless. Further punishment, further incarceration is meaningless if the person doesn't know why they're there. Or why they're being punished. Secondly, with regard to general deterrence, I just can't believe that somebody would learn that Judge Hurley released Ms. Baker after 25 years in a cognitive morass with dementia. And somebody says, you know what, I think I should go out and commit those same crimes. And even though I might get 45 years, which might be a de facto life sentence, it'll be worth it because I'll probably get dementia and somebody will let me out at 25. That's not what's going to happen. So I think that with regard to the judge's assessment of the evidence, he falls down on both of those prongs as well. There is no just punishment in keeping her in jail, and there is no general deterrence in not granting the application. Well, but that's not – I think you're being a little bit unfair to Judge Hurley. As I read the record in these areas we're talking about, you know, he focused on the heinous crime this woman committed, but I mean that's kind of quotidian talking about murders. But he talked in terms of punishment and a message to the community that certain levels, certain kinds of conduct are just not tolerable. I get that, but you have to be specific to the defendant before you, and she presents with a particular set of circumstances that undercut, I think, his ultimate determination in this matter. I like Judge Hurley myself, but in this instance I don't think that was a solid decision. Thank you. Do you have questions? No. Thank you very much. We appreciate the argument. Why don't we hear from the government now, and I understand we have Mr. Rose for the U.S. Attorney's Office. Good morning, Your Honors. May it please the Court. My name is Charlie Rose. I'm the Assistant United States Attorney in the Eastern District of New York representing the government on this appeal. The issue before the Court in appeal is whether the District Court properly exercised its discretion in denying the defendant's motions for a compassionate release. The answer is yes. Nothing the defendant said in the papers or today changes that. Here we're confronted with the appeal of not one, but multiple determinations, one of which is likely moot by the District Court after extensive briefing that the compassionate release was not warranted. Let me ask you this. Tell me from the government's point of view what the most compelling reasons are for keeping this woman locked up. Yes, Your Honor. Consistent with what Judge Hurley found in the District Court opinions, the controlling 3553A factors here are the nation's circumstances of the crime, which he found were heinous, the need for just punishment to reflect the seriousness of that crime, and the general deterrence factor, all of those which were considered by the District Court both on the initial motion for compassionate release and the subsequent motion for compassionate release once the Court had determined that there was a potentially valid basis for granting the extraordinary and compelling reason for the release. How do you punish someone with dementia who doesn't realize? How does incarceration punish someone who doesn't know where they are? The motion that was before Judge Hurley was directed to allow the judge in its discretion to make that sound determination. To make what? Make that determination. I'm not asking procedural questions. I'm just asking a straightforward question. How does incarceration punish an individual who does not know where they are? Specifically, as the government conceded in this instance, the specific deterrent effect of punishing this defendant is not valid. And the Court recognized that when it said, and as Mr. Brandon said, the instant analysis is not altered by that determination. Well, there was indications in the record that I suppose she is experiencing age-related deteriorating cognitive dysfunction. I suppose one could read that as saying that she doesn't have total dementia yet. Would your argument necessarily be the same if, I don't know, a year from now or perhaps even now, given the passage of time, if it turns out she has reached a state of complete dementia and absolutely no understanding of her surroundings and absolutely no recollection of what she did or anything else, would the government necessarily take the same position in those circumstances? Yes, Your Honor. And I think we've already sort of seen that shift. The government was presented with the fact that the defendant was in her 80s, suffering from a myriad of health concerns at the time of the initial... So your view is that no matter what happens, she has to die in prison? That was the determination that Judge Hurley made. No, no, no. I asked the government's position. The government's position is, yes, that she should be forced to serve the entirety of her sentence. And that was because of the nature of the crime. The nature of the crime was heinous. We had a cold-blooded murder. The woman conspired to commit the obstruction of justice murder of her former paramour and co-conspirator in a multimillion-dollar health care fraud. The murder, after failing to find a hitman to commit the murder, she had her son do the murder. Would it have been abusive discretion for the court to grant the motion for a compassionate release? No. The court was well within its discretion to either grant or deny the motion, and it did that. I'm sure you're more familiar with these BOP statistics than I am, but keeping this woman in jail, given her age and given her health issues, it's costing taxpayers in excess of $100,000 a year. I mean, that's ten college tuitions. I know that too well, Your Honor. To the extent that you're talking— If she'd been prosecuted stateside, she would have been eligible for release after 25 years, right? And that's where the vast majority of the murders are prosecuted. Your Honor, given the concerns of the cost, based on what the— Let me ask a question. Let me interrupt a bit. Should that bear into a court's thinking at all? Your Honor, respectfully, no. Either the federal—based on the represented defendant's health status as it is, either the federal government's going to be paying for her full-time, round-the-clock care, which is being provided at a federal medical facility, or she's going to likely be, if released, if Judge Hurley had decided to grant the release, she would have— On Medicaid. —been on Medicaid, and the state would be paying for that. Can I ask a question? And I apologize. This may be in the record. But was the victim's family consulted in the course of this? And if so, what were their views that were expressed? Yes. On the second motion for compassionate release, especially with the issue of dementia that had come up, the government reached out to the victim's family, including the victim's daughter. In that submission to Judge Hurley, other family members requested that the appellant stay in prison for the rest of her life. The victim's daughter, Dr. Baker's—I don't remember the doctor's name. The doctor's daughter indicated—Hodge, yes, thank you. The doctor's daughter indicated that her opinion was that, given the fact that Ms. Baker would not understand the nature of why she was being further incarcerated, that she had no objection to Ms. Baker's release. And this was all brought to the court's attention. This was brought to attention, and Judge Hurley specifically addressed that in his denial of the second motion for compassionate release. One other question. Your adversary wrote in his brief that 45 years on a murder count for a first offender is extremely harsh, and given the experience in the southern and eastern districts, that 25 to 30 years for a murder count would be the norm. Is that your experience as well? Your Honor, as we addressed in our brief, we have a situation here where there is not a mandatory life sentence that was imposed. We have a sentence where, upon resentencing after the successful initial appeal, the district court, taking all the factors into consideration, imposed a 45-year sentence on a 63-year-old woman. So to the extent that the nature of the sentence is severe, it's properly severe, and it reflects the nature and the severity of the crime. Thank you. Okay. We have no further questions. Thank you both. We appreciate your arguments, and we will take the case under advisement.